IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| WILBUR CRYMES,              )<br>                             )<br>    Plaintiff,             )<br>                             )<br>    v.                       )<br>                             )<br>CITY OF MONTGOMERY, et al., )<br>                             )<br>    Defendants.              ) | CIVIL ACTION NO.<br>  2:10cv879-MHT<br>       (WO) |

OPINION

Plaintiff Wilbur Crymes asserts federal and state-law claims arising out of his seven-day detention at the municipal jail in Montgomery, Alabama; he asserts constitutional claims under the eighth and fourteenth amendments (enforced through 42 U.S.C. § 1983), and negligence claims under Alabama law.  In addition to the City of Montgomery, the defendants are the jail's former administrator, A.J. Hardy, and assistant administrator, Janice Hopkins.  Count One of the complaint alleges that the defendants violated the eighth and fourteenth amendments by acting with deliberate indifference to

Crymes's medical needs; Count Two charges negligence under Alabama law for the same allegedly inadequate medical care; and Count Three seeks to impose liability on the defendants for their alleged failure to train or supervise their employees adequately.  This court has original jurisdiction over the federal claims, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the state-law claims, 28 U.S.C. § 1367.

The case is currently before the court on the defendants' motions for summary judgment.  Summary judgment is warranted if, after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Finding this standard met, the court will grant the motions.

## I.  FACTS

On October 15, 2008, Crymes was stopped at a roadblock set up by Montgomery police officers. The officers placed Crymes under arrest after a background check revealed that he had outstanding warrants. During intake, Crymes was asked a number of questions about his medical health and condition, and a guard recorded his answers on an intake and screening form. While the form, along with other intake records, did not indicate that Crymes has any medical condition, disease, or history of medical problems the officers would need to be aware of, Crymes did tell the guard that he has hemophilia. Once booked, Crymes was put in the "drunk tank," where he was made to stand for about five hours. In the meantime, Crymes began to have stiffness in his knee and started experiencing pain.* Crymes did not say much to the jail

---

* In his response to the defendants' summary-judgment motion and for the first time, Crymes's attorney contends that Crymes's knee pain began before having to stand in
(continued...)

3

guards or nursing staff about any knee stiffness or pain he experienced while in the lock-up; he said only that he "needed to go to the emergency room." Crymes Depo. (Doc. No. 22, Ex. 1, at 33). From there, Crymes was transferred to another area of the jail where he was able to sit comfortably.

The next day, Crymes appeared in municipal court and was convicted and sentenced to seven-days imprisonment. Over the next week, Crymes repeated his request to go to the hospital and was temporarily placed in the "special need" observation unit (what Crymes calls the "suicide watch" area) for roughly a day on the basis of

---

*(...continued)
the drunk tank. He says that, "During the arrest, [Crymes] sustained a contusion to his knee," which caused him "to bleed internally and swell in the area surrounding his knee." Pl. Resp. Br. (Doc. No. 22, at 1). Crymes's attorney later made similar allegations at oral argument. However, there is no sworn testimony supporting this contention, and Crymes points to nothing in the record describing any contusion he might have sustained during his arrest. This sort of showing is required at summary judgment, see Fed. R. Civ. P. 56(c)(1). Given the lack of evidence in the record on this fact, the court does not credit Crymes's assertion.

unspecified "medical needs."  Id. at 35; Hardy Depo. (Doc. No. 22, Ex. 2, at 22-23).  The record is unclear as to which medical issue led to the move, but Crymes knew the transfer was done to help him and was an indication that he "finally got through to one of the officers." Crymes Depo. (Doc. No. 19, Ex. 2, at 38).  Though it was a nurse who requested Crymes's transfer, Assistant Administrator Hopkins's initials appear on the log documenting the fact that Crymes had been placed in the observation unit.  It is undisputed that Crymes did not receive any additional medical attention for his hemophilia.

Following his release, Crymes filed this lawsuit.


## II. DISCUSSION

A. Deliberate Indifference (Count One): Count One of the complaint alleges that the defendants were deliberately indifferent to Crymes's medical needs while he was detained at the jail.  Crymes does not specify

whether this claims arise from his pre-trial detention (in which case the due process clause of the fourteenth amendment covers his claim) or from the time spent in the jail following the judge giving him a sentence (in which case the eighth amendment's prohibition on cruel and unusual punishments would cover his claim) or both. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 & n.5 (11th Cir. 1985).  This ambiguity need not be resolved, however, because the court treats the eighth and fourteenth amendments as coextensive for claims involving the denial of a basic need like medical care. Marsh v. Butler County, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc).  For both provisions, the Constitution is violated by officials deliberate indifference to prisoners' serious medical needs.  Hamm v. DeKalb County, 774 F.2d 1567, 1572-74 (11th Cir. 1985).

To prevail, Crymes "must satisfy both an objective and a subjective inquiry." Bozeman v. Orum, 422 F.3d

1265, 1272 (11th Cir. 2005) (internal quotation marks and citations omitted). First, he "must prove an objectively serious medical need," id., that "poses a serious risk of serious harm" if left unattended. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted). Second, as a subjective matter, Crymes must prove that the prison official acted with deliberate indifference to that need. Id. Deliberate indifference is more than negligence; it requires knowledge of the risk and disregard of the inference that such a risk could harm an inmate or prisoner. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Once an officer has knowledge of a serious medical risk, a finding of deliberate indifference can

come in many ways: it "may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment"; deliberate indifference can occur when "the need for treatment is obvious" but the medical care provided "is so cursory as to amount to no treatment at all"; and even where "medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours."  <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999).  For several reasons, Crymes cannot meet this standard.

    First, there is nothing in the record substantiating Crymes's contention that he had an objectively serious medical need.  The court agrees with Crymes that hemophilia is a serous medical condition. Hemophilia, a bleeding disorder that prevents blood from clotting properly, can subject a person to "spontaneous" or excessive bleeding (both internally, from a bruise or

fall, and externally, from a cut or scrape), and "can cause severe arthritis, crippling, or death." Christopher v. Cutter Labs., 53 F.3d 1184, 1187 (11th Cir. 1995).  The problem for Crymes, however, is that a medical condition does not necessarily equate to a serious medical need.  While Crymes has a serious medical condition, he has not submitted any evidence that could show he experienced an objectively serious need during his time in the city's lockup.

Taking the facts in the light most favorable to Crymes, the court assumes that Crymes told the officers about his hemophilia; that he experienced knee stiffness and pain from standing in the drunk tank; that he complained that he needed an emergency room while in the drunk tank; and that he told nurses about his desire to go to the hospital throughout the remainder of detention. In addition, the parties dispute why Crymes never filled out a "sick slip," which inmates who have medical problems are given if they have a medical complaint,

9

illness, or need. The defendants fault Crymes for not filling out a sick slip and suggest that this failure dooms his claim. Crymes says that he was never given a sick slip to fill out in spite of his complaints. Taking the facts in his favor, the court assumes that Crymes was never given a sick slip.

Nonetheless, Crymes's claims fail because he has not adduced evidence demonstrating that he had a specific <u>need</u> related to his hemophiliac <u>condition</u> while detained by the city. For instance, there is nothing in the record, either through affidavit, exhibit, or deposition, that would demonstrate the extent of Crymes's pain or that would reveal a serious medical need (one that a lay person would recognize) during his time in the lock-up. Crymes has submitted no evidence describing the extent of <u>his</u> hemophilia (the severity of which can vary), nor has he provided the court with medical evidence (such as a doctor's report or an affidavit from his treating physician) that would document harm caused to him from

his time in the city's jail. And, while Crymes experienced some stiffness and pain in the drunk tank, nothing in the record demonstrates the extent of this pain relative to the knee pain he experiences regularly (which is described in the record) or even whether this pain was attributable to standing for a few hours, his hemophilia, or both. Such evidence is necessary to prove a claim for deliberate indifference and is simply missing. Unlike the motion-to-dismiss phase of litigation, at summary judgment this lack of evidence is fatal. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>cf</u>. <u>Walker v. Peters</u>,233 F.3d 494 (7th Cir. 2000) (explaining that when a plaintiff puts forth "no evidence that he was injured by the defendants' refusal on some occasions to provide him" with medication to treat his hemophilia, "he cannot make out a claim of deliberate indifference relating to his treatment as a hemophiliac").

But, even assuming these that evidentiary gaps had been filled and that Crymes were able to demonstrate a serious medical need related to his hemophiliac condition, Crymes has not met his burden of satisfying the subjective component (that is, the deliberate-indifference inquiry) of his constitutional claim. Administrator Hardy was not in the jail at the time and did not meet or even hear about Crymes, or his hemophilia, until after litigation began. While Assistant Administrator Hopkins signed off on Crymes's transfer into the observation unit, there is no evidence establishing a further risk that she both knew of and the chose to ignore. Indeed, Crymes's counsel admitted during oral argument that there is no evidence in the record demonstrating that either Hardy or Hopkins had any knowledge of Crymes's hemophilia, medical requests, or knee stiffness and pain. And, even assuming other jail guards or nurses knew of Crymes's condition and need, there is no respondeat superior for a § 1983 claim.  <u>See</u>

Thomas v. Bryant, 614 F.3d 1288, 1315 n.24 (11th Cir. 2010).

Finally, to be liable, the city must have had a practice, policy, or custom of jail guards acting deliberately indifferent to objectively serious medical complaints.  Monell v. New York Dep't of Soc. Servs., 436 U.S. 658 (1978).  Given that Crymes has not proven a violation of the constitution, which is the minimal requirement for demonstrating municipal liability, the city cannot be liable either.  See id. at 694.  In addition, even if Crymes had proven a single constitutional violation, there is nothing in the record demonstrating a formal policy or even an informal practice or custom (for example, of officers routinely ignoring inmates requests for help with the imprimatur of higher-ups like Hardy and Hopkins) that could make the city liable here.  For these reasons, summary judgment will be granted will be granted in favor of the defendants on Count One.

B. Negligence (Count Two): Count Two of the complaint alleges that, even if the defendants were not deliberately indifferent to Crymes's medical needs, they were negligent in a manner that makes them liable in tort under Alabama law. The defendants raise various forms of state-law immunity in response. The court, however, need not delve into these complex state-law immunity doctrines. Instead, the same evidentiary failings above apply with equal force here. As the court mentioned, there is no evidence of damage or injury in the record flowing from the defendants' conduct. Unlike an action pursued under § 1983, where nominal damages are permitted without a showing of quantifiable injury, see, e.g., Amnesty Int'l v. Battle, 559 F.3d 1170, 1177 (11th Cir. 2009), a showing of injury and damages caused by the defendant is essential to proving a negligence tort under Alabama law. See Griffin v. Unocal Corp., 990 So.2d 291, 308 (Ala. 2008) ("'Alabama law has long required a manifest, present injury before a plaintiff may recover

14

in tort.'" (quoting <u>Southern Bakeries, Inc. v. Knipp</u>, 852 So.2d 712, 716-17 (Ala. 2002)); <u>Davis v. Hanson Aggregates Southeast, Inc.</u>, 952 So.2d 330, 335 (Ala. 2006) ("Damages are an essential element of the tort of negligence. [P]roof of damage [is] an essential part of the plaintiff's case." (internal quotation marks and citations omitted)). Without any showing of injury or damage, Crymes cannot prevail, and summary judgment is due to the defendants on the negligence claim.

C. <u>Failure to Train and Supervise (Count Three)</u>: Given the foregoing, the court can dispose of Count Three expeditiously. Without specifying whether this claim arises under the federal constitution or state law, Crymes argues that the defendants are liable for their failure to train and supervise adequately the jail guards. Having found no violation of the federal constitution or Alabama tort law upon which this sort of claim could rest, the court holds that Crymes cannot prove the defendants are liable for any failures related

to training and supervision.  See Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (2011) (describing the showing necessary to find a city liable for a failure to train claim under § 1983); Bedsole v. Clark, 33 So.3d 9, 15-16 (Ala. Civ. App. 2009) (discussing standards for failure to train claims under Alabama law).  Thus, summary judgment for the defendants is proper on this count as well.

\* \* \*

For the foregoing reasons, the defendants' motions for summary judgment will be granted.  An appropriate judgment will be entered.

DONE, this the 16th day of September, 2011.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE